# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**JONATHAN LEE PIERSON**                                   **PLAINTIFF**

**VS.**                                 CIVIL CASE NO. <u>1:19-CV-085-GHD-RP</u>

**ITAWAMBA COUNTY, MISSISSIPPI;**
**CHRIS DICKINSON, SHERIFF OF ITAWAMBA COUNTY,**
**in his official capacity;**
**LARRY JOHNSON, ITAWAMBA COUNTY SHERIFF'S DEPUTY,**
**in his individual capacity;**
**JOHN BISHOP, ITAWAMBA COUNTY JUSTICE COURT JUDGE,**
**in his official capacity;**
**OTHER UNKNOWN PERSONS, in their individual capacities.**          **DEFENDANTS**

## COMPLAINT

Plaintiff, Jonathan Lee Pierson, brings this action for compensatory and declaratory relief, and in order to vindicate his clearly established First, Fourth, and Fourteenth Amendment rights under the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988; and pursuant to Mississippi law and the Mississippi Constitution.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, 2201, 2202, and 42 U.S.C. §1983. Venue is proper in this Court pursuant to 28 U.S.C. §1391. This Court also has pendent jurisdiction to hear the state law claims pursuant to 28 U.S.C. §1367.

## PARTIES

2. Plaintiff, Jonathan Lee Pierson, is an adult resident of Mooreville, Lee County, Mississippi.

3. Defendant, Itawamba County, Mississippi, is a political subdivision of the State of Mississippi subject to §1983 *Monell* liability as well as liability pursuant to the Mississippi Tort Claims Act (MTCA), as set forth in §11-46-1, *et seq.*, of the Mississippi Code, Mississippi common law, and the Mississippi Constitution, for the facts, acts, and causes of actions set out herein.

4. Defendant, Chris Dickinson, is the Sheriff of Itawamba County, Mississippi, and as such is the final policy-maker for that entity and was at all times for the actions complained of acting under color of state law. He is sued in his official capacity.

5. Defendant, Larry Johnson, is a deputy sheriff employed by the Itawamba County Sheriff's Department, and was at all times for the actions complained of acting under color of state law. He is sued in his individual capacity.

6. Defendant, John Bishop, is a justice court judge for the Justice Court of Itawamba County, and was at all times for the actions complained of acting under color of state law. He is sued in his official capacity.

7. Defendants, other presently unknown persons, all who were acting under color of state law during the actions complained of herein, are the other deputies and personnel of the sheriff's department who were immediately present or assisting in the arrest of the plaintiff and who participated or were otherwise involved in the attempt to delete the video file of the occurrence which had been recorded by the plaintiff on his cell phone. These individuals are sued in their

-2-

individual capacities.

## FACTS

8. On or about October 25, 2017, in the daytime, the plaintiff Mr. Pierson, and a colleague, were engaged in the constitutionally protected expressive First Amendment activities of filming the environs of the City of Fulton, including the town square where the Itawamba County courthouse is situated, a small park to the south of the courthouse, and the outside of the Itawamba County Sheriff's Department which is located across the street from the southwest corner of the courthouse.

9. Mr. Pierson was wearing a yellow flourescent net vest similar to a road-worker's or journalist's vest and was clearly not attempting to act in a secretive, surreptitious, or suspicious manner. Neither Mr. Pierson nor his colleague engaged in any behavior that was disruptive, combative, loud, disturbing, disorderly, or unpeaceful, nor any that would give rise to any articulable suspicion that they were engaged in, or about to engage in, any crime such that their presence could be lawfully questioned or that they should be stopped for questioning, much less arrested.

10. Nevertheless, Mr. Pierson and his colleague were unlawfully accosted at least twice by Itawamba County Sheriff's deputies who unlawfully demanded identification and wrongly claimed that it was illegal to film. This request for identification was refused on each occasion.

11. The second time Mr. Pierson was accosted, his identification was again demanded and the request again refused whereupon Mr. Pierson was placed under arrest by Deputy Larry Johnson on the charge of Disorderly Conduct-Failure to Comply.

-3-

12. At no point during this encounter did the deputies have a reasonable suspicion that Mr. Pierson or his colleague were engaged in any criminal activity such that even a temporary stop and questioning could be justified. At no point during this encounter did the deputies observe Mr. Pierson or his colleague commit any crime, misdemeanor or felony; such that an arrest could be made without benefit of a warrant.

13. Mr. Pierson's cell phone was seized at the time of the arrest and after his property was ultimately returned to him, Mr. Pierson realized that one or more files had been deleted from the phone. However, the video file which captured the encounter and arrest was not deleted. Upon information and belief, a person or persons whose identity is presently unknown attempted to spoil the evidence but failed. Mr. Pierson did not consent to anyone with the Itawamba County Sheriff's Department opening his cell phone, with or without a warrant.

14. As a result of his arrest, Mr. Pierson incurred great inconvenience, distress, embarrassment, and the expenditure of funds for bail bond and fees.

15. On November 6, 2017, Mr. Pierson and his colleague appeared before the Itawamba County Board of Supervisors to complain of their treatment at the hands of the Sheriff's Department. The response of the Board was that they had no control over the Sheriff and could provide no assistance. Media reporting at the time make it clear that the Sheriff's Department was aware of this appearance before the Board and officials from the Department responded with statements acknowledging that Mr. Pierson and his colleague were filming and taking pictures in several places throughout downtown Fulton including the county courthouse, Playgarden Park, post office, and outside the jail; but then go on to complain that they were confronted after several complaints and that Mr. Pierson was arrested for "repeatedly refusing to provide

-4-

identification upon request" and charged with disorderly conduct although Mississippi is not a so-called "stop and identify" State, and Mr. Pierson had no obligation to respond to police questioning in this circumstance - and especially so where his conduct was not in fact "disorderly."

16. By this point, it is an absolute certainty that Sheriff Dickinson was aware of the circumstances of Mr. Pierson's arrest and that he ratified and approved the actions of his deputies and ratified as the official, albeit unwritten, policy of his Department that persons filming in downtown Fulton may be asked to identify themselves and arrested for refusal to do so. As a result of the video of the arrest having been posted online, the Sheriff's Department was subjected to heavy criticism from all parts of the United States including comments and excoriation on the Itawamba County Sheriff's Department webpage. The video was adapted into an embarrassing and humiliating parody of Sheriff's Department personnel including alteration of facial features and the addition of a "hillbilly" twang. There is no question that the Sheriff and Department personnel knew of this criticism and pushback and the reasons for it; nonetheless, they pushed on with their prosecution of Mr. Pierson.

17. On December 17, 2017, at trial in the Itawamba County Justice Court, the charge of Disorderly Conduct was amended to Disturbing the Public Peace. This amendment was without Mr. Pierson's input or consent, and without grant or mention of a right to a continuance, and violated his right to be informed before trial regarding what charge he was to face. This failure violated Mississippi statutory law and Mr. Pierson's rights to due process pursuant to Section 14 of the Mississippi Constitution; his right to have known the nature and cause of the accusation against him guaranteed by Section 26 of the Mississippi Constitution; and the Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution.

18. At the beginning of the trial in the Itawamba County Justice Court, Mr. Pierson requested the right to record the proceedings. The Justice Court judge refused to allow it; once again in violation of Mississippi statutory law specifically permitting a defendant in a court without a court reporter to self-record at the very least for purposes of impeachment; and once again in violation of Mr. Pierson's right to procedural due process under both the Mississippi Constitution and the Constitution of the United States.

19. During or at the close of the proceedings in the Justice Court, in response to Mr. Pierson's protestations that he had the right to film in public, even to film the police and to film outside a police station or jail situated on or next to the town's public square, the judge stated that there is no right to film the police and subsequently convicted Mr. Pierson of Disturbing the Public Peace.

20. Itawamba County officials, including Sheriff Dickinson, and the Justice Court, have clearly taken the policy position that there is no right to film the police or, apparently, to film in public at all and, where law enforcement is moved to request it, refuse to provide identification or satisfactory (to Itawamba County officials) justification for engaging in this activity protected by both Section 13 of the Mississippi Constitution and the First Amendment to the United States Constitution.

21. Mr. Pierson timely appealed the justice court conviction to the Circuit Court of Itawamba County where there pends a motion to dismiss the charging affidavit for insufficiency. That the prosecution continues against Mr. Pierson belies any argument for another reason for the arrest and emphasizes that it is still, to this day, the official policy position of Itawamba County

and its officials that there is no right to film the police nor even to generally film in public without the risk of questioning by law enforcement officers -- and upon such questioning, there is no right to refuse to answer.

22. As a result of the arrest and still continuing improper prosecution, as previously mentioned, Mr. Pierson has incurred Mr. Pierson incurred great inconvenience, distress, embarrassment, and the expenditure of funds for bail bond and fees. He has additionally incurred costs for attorney fees and expenses for his appeal and defense in the circuit court and for his subsequent efforts to vindicate his rights in this forum.

## CLAIMS

### Federal Claims

23. Mr. Pierson's right to film in a public place, including the right to film the police, is a clearly established constitutional right. See, *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017). The defendants interfered with that right without reason and retaliated against Mr. Pierson when he insisted upon his rights under the First Amendment to the United States Constitution.

24. The unlawful questioning, unlawful arrest and seizure of Mr. Pierson's person, the subsequent unlawful search of his person and of his cell phone, detention, and false imprisonment of Mr. Pierson, all without probable cause that Mr. Pierson committed any crime, but rather because Mr. Pierson was exercising his First Amendment rights, violate the First Amendment, Fourth Amendment, and the Fourteenth Amendment to the United States Constitution.

25. The search of Mr. Pierson's cell phone was in violation of the Fourth Amendment

to the United States Constitution and once again in violation of a clearly established constitutional right: the right to not have one's cell phone searched in the absence of a warrant (even pursuant to arrest). See, *Riley v. California*, 573 U.S. ____, 134 S.Ct. 2473 (2014).

26. The effort to delete the video file on Mr. Pierson's cell phone constituted an attempt at spoliation of evidence, an effort to deprive Mr. Pierson of his means to defend himself against an unlawful prosecution, was a perversion and subversion of justice, amounts to obstruction of justice, and constituted a deprivation of Mr. Pierson's right to be free from an unreasonable search without probable cause or warrant as required by the Fourth Amendment and to his right to due process guaranteed by the Fourteenth Amendment.

27. Mr. Pierson's Fifth, Sixth, and Fourteenth Amendment rights were violated at the trial in the justice court stage where Mr. Pierson was not permitted to record the proceedings though that right is part of the process that is due as specifically permitted under Mississippi statutory law; by amendment of the charge at trial, without prior notice nor opportunity to object by Mr. Pierson, nor notice of the right to a continuance and to obtain counsel at that stage, contrary to the process that is due in accordance with Mississippi law; and where the effect was to deprive Mr. Pierson of the opportunity to know that with which he was to be charged and tried and to have a critical means of preserving a record of the proceedings.

28. That the prosecution of Mr. Pierson continues unabated makes manifest the need for declaratory relief including a declaration that the policy of defendants presuming a right to interfere with filming in public in general, and filming the police in particular, is unconstitutional; and further, that searching cell phones without a warrant, whether for an ostensibly good reason or for the purpose of spoliation of evidence, is also unconstitutional; and

that all are prohibited by clearly established law which the defendants are presumed to know and are burdened with constructive knowledge of it even if in fact they did not know it – or if they did know of it yet are apparently willfully indifferent to it.

### State Law Claims

29. The interference with Mr. Pierson's right to film in a public place, including the right to film the police, violated Sections 11 and 13 of the Mississippi Constitution with regard to the right to peaceably assemble and the right to free speech and of the press.

30. The unlawful questioning, unlawful arrest and seizure of Mr. Pierson's person without warrant or probable cause; the subsequent unlawful search of his person and of his cell phone; and the detention, and false imprisonment of Mr. Pierson, violated Sections 14 and 23 of the Mississippi Constitution.

31. Mr. Pierson states common law claims for: unlawful detention; unlawful arrest; unlawful search; false imprisonment; abuse of process; and malicious prosecution.

32. Mr. Pierson states a claim of outrage, intentional infliction of emotional distress, negligent infliction of emotional distress.

33. The effort to delete the video file on Mr. Pierson's cell phone constituted an attempt at spoliation of evidence, an effort to deprive Mr. Pierson of his means to defend himself against an unlawful prosecution, was a perversion and subversion of justice, amounts to obstruction of justice, and constituted a deprivation of Mr. Pierson's right to be free from an unreasonable search without probable cause or warrant as required by the Mississippi Constitution and was an outrageous violation of his rights to due process under that document.

-9-

34. The interference with Mr. Pierson's right to make a record of the proceedings in the justice court and to be informed of the charge which he was to face prior to be tried upon it, or to have a continuance, or to be informed of the right at that stage to seek counsel, violated Sections 14 and 26 of the Mississippi Constitution as well as Mississippi statutory law.

35. The conduct of the defendants evince a willful or deliberate disregard for the law and for the rights of citizens and demonstrate a failure to train, supervise, and control, with regard to the law that the defendants are tasked with enforcing.

36. The continuing prosecution of Mr. Pierson is malicious and without probable cause and must of necessity fail. However, this claim is not currently ripe and the Court is requested to hold it in abeyance until such time as the prosecution is resolved in Mr. Pierson's favor.

## DAMAGES

37. In order to bond out of jail, Mr. Pierson was required to expend a sum of at least $175 for bond and processing fees. Mr. Pierson has had to expend the sum of $200.00 in cash in order to take an appeal from the conviction in Justice Court. Mr. Pierson has so far incurred attorney fees for his defense against the charge and for work to vindicate his rights in an amount in excess of $8700.00 plus expenses so as to exceed a total of at least $9500.00.

38. To fully vindicate his rights and to be fully compensated, Mr. Pierson demands the sum of $500,000.00 or such other reasonable amount as the Court deems.

## REQUESTED RELIEF

39. Plaintiff, Jonathan Lee Pierson, requests the following relief:

a. damages against the defendants in the amount of $500,000.00 or such other amount deemed

reasonable by the Court sufficient to make the plaintiff whole, reimburse his losses and expenses, and vindicate his constitutional rights;

b. a declaratory judgment that the defendants are violating clearly established law concerning the First Amendment right to film in public generally, and to film the police specifically;

c. a declaratory judgment that the defendants are violating clearly established law in conducting a search of a cell phone without a warrant;

d. attorney fees pursuant to 42 U.S.C. § 1988;

e. all costs of this action;

f. any and all such other relief as the Court deems just and proper.

Respectfully Submitted,
Jonathan Lee Pierson

By: _Danny Lampley_
Danny Lampley
Attorney for the Plaintiff
MS Bar # 8717

Danny Lampley
Attorney at Law
496 County Road 445
Oxford MS 38655
(662) 236-2957
danlampley1960@gmail.com